[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-15189
Non-Argument Calendar
_____

Agency No. A096-205-221

ALEXANDRE VASILJEVICH SACHINSKI,
TATIANA VASILJEVNA SACHINKSKAIA,

Petitioners,

versus

US ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(September 13, 2013)

Before MARCUS, PRYOR and KRAVITCH, Circuit Judges.

PER CURIAM:

Alexandre Sachinski and his wife, Tatiana Sachinskaia, citizens of Belarus, petition for review of a decision affirming the denial of Sachinski's application for asylum.  Initially, the immigration judge held an evidentiary hearing and denied the Sachinskis' application, but the Board of Immigration Appeals remanded for the immigration judge to reconsider the petition.  On remand, the immigration judge considered additional documentary evidence; held a second evidentiary hearing and accepted testimony from the Sachinskis and Ethan Burger, an alleged expert about the political situation in Belarus; and again denied the Sachinskis' application.  The Board of Immigration Appeals concluded that the immigration judge did not clearly err in finding Sachinski not credible and that the immigration judge "acted within his authority in weighing the evidence," including Burger's testimony.  We deny the Sachinskis' petition.

We review the decision of the Board to determine whether it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole."  Carrizo v. U.S. Att'y Gen., 652 F.3d 1326, 1330 (11th Cir. 2011) (quoting Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001)).  "To reverse [those] fact findings, we must find that the record not only supports reversal, but compels it."  Mendoza v. U.S. Att'y Gen., 327 F.3d 1283, 1287 (11th Cir. 2003).  We review the legal conclusions of the Board de novo.  Id. at 1287 n.6.  When the

2

Board adopts the reasoning of the immigration judge, we also review the decision of the immigration judge. Carrizo, 652 F.3d at 1330.

Substantial evidence supports the finding that Sachinski was not credible, and the Board and the immigration judge provided specific, cogent reasons to support that finding. See id. at 1332. Sachinski gave vastly different accounts about his political activities and persecution in Belarus during his second evidentiary hearing in 2010 from the accounts he gave during his first hearing in 2005 and in his application for asylum. In 2010, Sachinski testified about being associated with two political parties, sewing banners and distributing flyers, and attending opposition meetings, but Sachinski had not mentioned any political activities in his application and had testified in 2005 that he only sympathized with the United Citizen Party. Sachinski testified in 2010 about being beaten by members of the special police during an opposition rally in Minsk, but that directly contradicted Sachinski's testimony in 2005 that he had not been persecuted and his statement in his application that he did not fear being tortured if he returned to Belarus. And Sachinski's recollection of details oddly improved with time. In 2005, Sachinski testified inconsistently that his alleged persecution began in 1995 and then in 1997, but in 2010, Sachinski testified in detail about how he had been persecuted for the first time in 1996. Also, in 2005, Sachinski testified about receiving anonymous telephone calls through 2000 at his home in Belarus and

3

could not remember receiving a specific threat, but in 2010, Sachinski testified that the calls ended in 2001 and that he had been told he would "end up in a ditch" if he did not end his affiliation with those "bastards."  The Sachinskis blame the inconsistencies and omissions on a lack of legal assistance in preparing their application and "overly hostile" questioning during their first hearing at which they appeared pro se.  But the Sachinskis could have amended their petition with the assistance of one of the five attorneys they retained before their first hearing.  They instead chose to appear pro se after retaining an attorney in California and misrepresenting to the immigration judge that they had moved from North Carolina to California.  And they fail to mention any of the questions that allegedly befuddled them.  See generally Ali v. U.S. Att'y Gen., 643 F.3d 1324, 1330 (11th Cir. 2011) ("Ali's pattern of lies has forced him to take a position that lacks any legal support.").  Notably, Sachinski was being questioned by the immigration judge in 2005 when he testified inconsistently about what year his persecution began and when he verified the statement in his application that he did not fear being tortured if he were to return to Belarus.  The Sachinskis' explanations do not "'compel' a reasonable fact finder" to credit Sachinski's later testimony.  See Chen v. U.S. Att'y Gen., 463 F.3d 1228, 1233 (11th Cir. 2006).

The Sachinskis argue that the Board and the immigration judge failed to consider their corroborative evidence, particularly the testimony from Burger, but

4

the Board and immigration judge gave "reasoned consideration" to all the evidence.  See Kazemzadeh v. U.S. Att'y Gen., 577 F.3d 1341, 1351 (11th Cir. 2009).  The immigration judge stated that he considered "[a]ll evidence . . . even [that he did] not specifically discuss[]" in his oral decision and that none of that evidence "alleviate[d] . . . or change[d]" his finding that Sachinski's testimony was "incredible."  The Sachinskis challenge the little weight given to affidavits and letters from their family and friends, but those documents were provided by interested parties who were not subject to cross-examination.  See Matter of H–L–H & Z–Y–Z–, 25 I. & N. Dec. 209, 215 (BIA 2010).  The Sachinskis argue that the immigration judge improperly restricted Burger to testifying about country conditions in Belarus, but Burger testified that his knowledge was based on stories he had read sporadically on the internet and on affidavits prepared by the Sachinskis and their daughter.  See generally United States v. Frazier, 387 F.3d 1244, 1262–63 (11th Cir. 2004) ("Proffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue . . . .").  The Sachinskis also challenge the little weight given to Burger's testimony, but that testimony was cumulative of the information in the 2004, 2005, 2007, and 2009 Country Reports already in evidence.

The Sachinskis argue that the record compels the conclusion that they suffered past persecution and have a well-founded fear of future persecution, but

5

we disagree.  In 2005, the Sachinskis testified about acts of vandalism and harassment that they assumed were connected to the political affiliations of a journalist who was related to Sachinskaia by marriage, but in 2010, the Sachinskis embellished their testimony about the incidents of vandalism and harassment and attributed those and other, new incidents to political activities that were not mentioned in the application or in their earlier testimonies.  Because of the weakness of the Sachinskis' later testimonies, they had to provide corroborating evidence.  See Yang v. U.S. Att'y Gen., 418 F.3d 1198, 1201 (11th Cir. 2005).  The evidence they submitted does not compel a finding that the Sachinskis suffered past persecution or face future persecution.  The Sachinskis submitted affidavits and letters about their political activities and alleged persecution, but those were prepared by family and friends who desired that the Sachinskis receive asylum.  See H–L–H & Z–Y–Z–, 25 I. & N. Dec. at 215.  The Sachinskis also submitted an excerpt of Sachinskaia's medical records prepared in 1998 when she was treated for facial abrasions and bruising, but those records do not reveal the cause of her injuries.  The Sachinskis rely on evidence in the Country Reports that the Belarusian government restricts the rights of citizens, detain and mistreats persons who organize and participate in opposition activities, and monitors the travel of citizens, but this evidence does not suggest that the Sachinskis will be "singled out for persecution on account of" Sachinski's political opinion.  See Al

6

Najjar, 257 F.3d at 1287 (internal quotation marks and citation omitted).

Substantial evidence supports the finding of the Board and the immigration judge

that the Sachinskis failed to establish that they were eligible for asylum.

We **DENY** the Sachinskis' petition.