[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No.  18-15235
_____

Agency No. A096-143-564


SYLVESTRE ESTEEVEN POINT DU JOUR,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(June 4, 2020)

Before JORDAN, TJOFLAT, and ANDERSON, Circuit Judges.

TJOFLAT, Circuit Judge:

Petitioner Sylvestre Point du Jour asks this Court to review an order of the

Board of Immigration Appeals ("BIA") dismissing Point du Jour's appeal from an

Immigration Judge's order of removal, and denying Point du Jour's motion for

remand based on a claim of ineffective assistance of counsel. The BIA denied Point du Jour's ineffective assistance of counsel claim because he failed to satisfy one of three procedural requirements to bring such a claim, as established by the BIA's decision in *Matter of Lozada*, 19 I&N Dec. 637 (BIA 1988), *aff'd sub nom. Lozada v. Immigration and Naturalization Serv.*, 857 F.2d 10 (1st Cir. 1988). Point du Jour argues that he "substantially complied" with all three *Lozada* requirements and asserts that the BIA order did not offer a "reasoned consideration" of the evidence Point du Jour offered in support of his compliance. We are not persuaded and accordingly deny Point du Jour's petition for review.

We construe a motion to remand that seeks to introduce new evidence as a motion to reopen, denial of which is reviewed for an abuse of discretion. *Ali v. U.S. Att'y Gen.*, 643 F.3d 1324, 1329 (11th Cir. 2011). Motions to reopen are disfavored in removal proceedings because "every delay works to the advantage of the deportable alien who wishes merely to remain in the United States." *Immigration and Naturalization Serv. v. Doherty*, 502 U.S. 314, 323, 112 S. Ct. 719, 724–25 (1992). Review by this court is limited to determining whether the BIA exercised its discretion in an "arbitrary or capricious manner." *Zhang v. U.S. Att'y Gen.*, 572 F.3d 1316, 1319 (11th Cir. 2009).

In a deportation proceeding, the Fifth Amendment's Due Process Clause gives an alien the right to effective assistance of counsel. *Mejia Rodriguez v.*

2

*Reno*, 178 F.3d 1139, 1146 (11th Cir. 1999).  To establish the ineffective assistance of counsel in the context of a deportation hearing, an alien must establish that his or her counsel's performance was deficient to the point that it "impinged the fundamental fairness of the hearing."  *Id.* (internal quotations omitted).  The alien must show that counsel's deficient performance was prejudicial to the outcome of the proceedings – in other words, it was "so inadequate that there is a reasonable probability that but for the attorney's error, the outcome of the proceedings would have been different."  *Dakane v. U.S. Att'y Gen.*, 399 F.3d 1269, 1274 (11th Cir. 2005).

We have held that the BIA may properly screen ineffective-assistance claims by using the three procedural requirements laid out in *Lozada*.  *Gbaya v. U.S. Att'y Gen.*, 342 F.3d 1219, 1223 (11th Cir. 2003) ("The BIA does not abuse its discretion by filtering ineffective assistance of counsel claims through the screening requirements of *Lozada* . . . .")  The three-part *Lozada* test requires each of the following: (1) that the motion be "supported by an affidavit of the allegedly aggrieved respondent . . . . set[ting] forth in detail the agreement that was entered into with former counsel" with respect to the actions to be taken and what representations counsel did or did not make to the respondent in this regard, (2) that "former counsel must be informed of the allegations and allowed the opportunity to respond," and (3) that the motion must "reflect whether a complaint

3

has been filed with appropriate disciplinary authorities" with respect to any violation of counsel's ethical or legal responsibilities, "and if not, why not." *Lozada*, 19 I&N Dec. at 639.  Though we have previously suggested that an alien does not need to strictly comply with these three requirements, and that substantial compliance is sufficient, we have never explicitly so held.  *Dakane*, 399 F.3d at 1274.  However, we do not need to reach the substantial-compliance issue today, as we find that Point du Jour's compliance has been neither substantial nor exact. *See Gbaya*, 342 F.3d at 1222 ("In this case, we need not decide whether the BIA may enforce strict compliance with *Lozada* or must also accept substantial compliance. Gbaya has achieved neither.").

Point du Jour disputes the BIA's finding that he did not substantially comply with the second requirement – that he did not provide evidence or otherwise show that his former counsel, Antonio Bugge, was given notice of the ineffective-assistance allegations against him and given an opportunity to respond.  Point du Jour argues that his affidavit illustrates that he regularly attempted to contact Bugge by phone and inform him of "grievances."  In addition, Point du Jour argues that his filing of formal disciplinary complaints triggered procedural rules that would inform Bugge of the claims against him and require him to respond.

We hold that the BIA did not abuse its discretion in determining that Point du Jour failed to satisfy *Lozada*.  Point du Jour claims that his repeated attempts to

4

contact Bugge about his case "informed [Bugge] of his grievances" and "allowed for an opportunity to respond," constituting substantial compliance with *Lozada*'s notice requirement.  Bugge may have been difficult to reach or evasive, but Point du Jour's own affidavit indicates that when he did make contact with Bugge, their conversations concerned how to proceed in the case and, later, why Point du Jour was ordered removed from the country.  The affidavit does not allege that, during any of these conversations, Point du Jour conveyed to Bugge that his assistance was ineffective, or that Point du Jour ever attempted to contact Bugge for the purpose of telling him so.  As such, nothing in the affidavit indicates that Bugge had any actual notice of allegations that his assistance had been ineffective or any opportunity to respond to those allegations, as required by *Lozada*.

Point du Jour's additional contention that he substantially complied with the notice requirement of *Lozada* by filing complaints against Bugge with the Florida Bar and the Executive Office for Immigration Review ("EOIR") cannot be sustained because it would eviscerate the separate nature of the *Lozada* requirements.  The third prong of *Lozada* implicitly recognizes that, in many cases, a meritorious ineffective-assistance claim will be formally filed by an alien against his or her counsel with disciplinary authorities.  Reading compliance with the third *Lozada* requirement to simultaneously constitute substantial compliance with the

5

notice requirement would eliminate any independent significance of the notice requirement.

Additionally, in the instant case, Point du Jour's complaints to disciplinary authorities about Bugge cannot support substantial compliance with the notice requirement because the Florida Bar and EOIR procedures of sending notice to the complained-of attorney are not automatically triggered. Pursuant to the Florida Bar's rules and regulations, after a complaint is filed, bar counsel conducts a screening inquiry to determine whether the alleged conduct would constitute a violation warranting discipline. R. Reg. Fla. Bar 3-7.3(a). The subject of the complaint does not receive notice of the complaint until the Florida Bar has completed its preliminary inquiry. *Id.* Similarly, the EOIR has a procedural rule stating that a "Notice of Intent to Discipline" is only sent to the allegedly deficient counsel if, after a preliminary inquiry, EOIR disciplinary counsel determines that the complaint has merit. 8 C.F.R. § 1292.19(b). As such, under either avenue, the filing of a grievance does not necessarily trigger notice being immediately sent to counsel or necessarily provide an opportunity for a response from counsel. Point du Jour did not show that either of his two complaints resulted in notice to Bugge or an opportunity to respond; thus, Point du Jour failed to show that his complaints constituted substantial compliance with the second requirement of *Lozada*.

6

Finally, Point du Jour argues that the BIA erred because it failed to adequately consider the evidence he put forth in support of his claim that he substantially complied with the second *Lozada* requirement.  The BIA is not required to specifically discuss each and every piece of evidence presented by the petitioner.  *Tan v. U.S. Att'y Gen.*, 446 F.3d 1369, 1374 (11th Cir. 2006).  So long as the agency has "given reasoned consideration to the petition, and made adequate findings," it has not erred by failing to consider any individual piece of evidence.  *Id.* (internal quotations omitted).  An agency's findings are adequate when they indicate that "the agency has considered the issues raised and announced its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted."  *Bing Quan Lin v. U.S. Att'y Gen.*, 881 F.3d 860, 874 (11th Cir. 2018) (internal quotations omitted).

The BIA did not fail to give reasoned consideration to Point du Jour's evidence.  In its decision, it references its review of both Point du Jour's submitted affidavit and the two filed disciplinary complaints.  The BIA's opinion indicates that it considered the evidence, but concluded that it does not show that Bugge was informed of an ineffective-assistance claim against him.  While the BIA may not have discussed every piece of evidence in detail, the record is clear that the BIA considered the evidence before it and made a reasoned conclusion; the BIA did not "merely react[]."  *Bing Quan Lin*, 881 F.3d at 874.

7

In conclusion, the BIA did not abuse its discretion in denying Point du Jour's motion to remand because he failed to meet the requirements for presenting an ineffective assistance of counsel claim under *Lozada*.

**PETITION DENIED.**